## HEWITT vs. WATKINS.

H. and W. were the owners of adjoining land. H. let his land lie open, and W. built the whole of the division fence between them. Afterwards H. enclosed his land. A dispute having arisen between the parties as to the value of said division fence and the proportion thereof which W. ought to pay to H., it was *held*, that the fence-viewers of the town, under 1 R. S. 353, §§ 30 to 36, had jurisdiction of the matter.

The decision of the fence-viewers, in such a case, should be reduced to writing and filed in the office of the town clerk; and when the dispute is as to *the value of the fence, and the proportion thereof which one party should pay to the other*, it should specify such sum, and an action will lie to recover the same.

If the dispute relate only to *the value and sum to be paid*, and there be no dispute about the proportion of the fence to be maintained by each, the certificate is valid, although it is silent about the proportion to be maintained by each. It is enough that it disposes of the matter submitted to the fence-viewers.

IN October, 1848, Hewitt sued Watkins in a justice's court, for the amount found by the fence-viewers of the town of Charlton, in the county of Saratoga, to be due to him. The complaint stated that for several years past the plaintiff and defendant had been and still were the owners of land adjoining to each other, in Charlton; that the defendant suffered his land to lie open, and the plaintiff, in 1840, at his own costs and expenses erected the division fence between them. That since said erection, the defendant, in 1847, enclosed his land and had since kept it enclosed. That the plaintiff afterwards, in July, 1848, in pursuance of the statute made choice of one fence-viewer of said town, and gave the defendant the requisite notice of eight days to select another, or that he the plaintiff would select both, for the purpose of estimating the value of such division fence, and the proportion thereof to be paid by the defendant: that the defendant neglected to make such choice, and the plaintiff, after the expiration of eight days, made choice of another fence-viewer of said town, and the two so elected met and examined the premises and proceeded according to the statute, and estimated the value of said fence, at the time of its erection, at $102, and the present value of one half and the proportion to be paid by the said Watkins, at $38,25; which decision was reduced to writing by them and

contained a statement of all necessary facts, and was by them duly filed in the clerk's office of the said town. That the defendant had due notice of the meeting of the fence-viewers. That he had not paid the $38,25, or any part thereof, nor had he at any time paid any part of the expense of building said fence, but on the contrary refused. The plaintiff demanded judgment against the defendant for $38,25, together with the fence-viewers' fees, and costs.

The answer denied every allegation in the complaint, and set up an accord and satisfaction on the 9th of October, 1847.

The plaintiff replied to the accord and satisfaction, and denied that it embraced the present claim, and alledged that the present cause of action accrued subsequent to that settlement. Issue was joined thereon. The cause was tried by jury on the 23d of October, 1848. On the trial it was proved that the lands of the plaintiff lay east of and adjoining a strip of land belonging to the defendant. The two pieces of land were bounded upon each other, for a distance of 102 rods. The defendant had been in possession of his for near thirty years, and the plaintiff in possession of his for about sixteen years. The defendant had let his land lie open till in May, 1847, when he enclosed it at the south end, next the road. While the defendant's lot thus lay open, and in 1840, the plaintiff erected a division fence on the line between him and the defendant. On the 12th July, 1848, the plaintiff notified the defendant in writing, that he had selected Francis H. Skinner, a fence-viewer, to apportion and appraise the division fence between them, and that unless the defendant selected one, in eight days, the plaintiff would select another. It did not appear that the defendant selected a fence-viewer, but it did appear that afterwards William Dreamer, another fence-viewer of said town, was associated with said Skinner, and that after giving the defendant personal notice of the day, hour and place of meeting of the fence-viewers, to apportion and divide the fence and appraise the damages, they met, inquired into the facts and examined the premises, and made their certificate in writing and subscribed the same on the 26th of August, 1848, and caused it to be filed in the town clerk's office of said

town. The certificate recited that the parties were the owners of adjoining land; that the defendant had let his land lie open, and the plaintiff had built the division fence between them, and that the defendant had never enclosed his land, and that a dispute had arisen concerning *the proper proportion of the value of the said division fence to be paid for by said Watkins.* It then certified that they had made due inquiries into the facts, and had examined the premises, and they gave a description of the fence, and stated that the value thereof was one dollar a rod, or $102 at the time it was built, which was in 1840; that the proper proportion of said value to be paid by said Watkins to the said Hewitt was $38,25, that being the present value of one half of said fence, to wit, 75 cents a rod. They certified their fees at $1,75, and subscribed the certificate.

On the part of the defendant there was evidence of the settlement of a trespass suit between the parties in Oct. 1847. There was no evidence that the present controversy was embraced in that settlement.

The jury found a verdict for the plaintiff for $38,25, on which the justice gave judgment. The defendant appealed to the county court of Saratoga county, which court, on the 3d of July, 1850, affirmed the judgment of the justice. The defendant then appealed to this court.

*J. Brotherson*, for the appellant.

*C. B. Cochrane*, for the respondent.

*By the Court*, WILLARD, P. J. The first objection to the plaintiff's right of recovery was that the fence-viewers had not jurisdiction of the subject matter. The revised statutes (1 *R. S.* 353, § 30 *et seq.*) provide that when two or more persons shall have lands adjoining, each of them shall make and maintain a just proportion of the division fence between them, except the owner or owners of either of the adjoining lands shall choose to let such land lie open. In the latter case, if he shall afterwards enclose it, he shall refund to the owner of the adjoining land, a

just proportion of the value at that time, of any division fence that shall have been made by such adjoining owner, or he shall build his proportion of such division fence. The 32d section provides that the value of the fence, *and the proportion thereof to be paid by such person,* and the proportion of the division fence to be built by him, in case of his enclosing his land, shall be determined by any two of the fence-viewers of the town. The 34th section provides that each party shall choose one fence-viewer, and if either neglect, after eight days' notice, to make such choice, the other party may select both. The fence-viewers are required to examine the premises and hear the allegations of the parties. Their decision must be reduced to writing, must contain a description of the fence, and of the proportion to be maintained by each, and must be forthwith filed in the office of the town clerk of the town. Their decision is made final upon the parties to such dispute and to all holding under them.

The facts proved on the trial brought this case within the foregoing provisions. The fence-viewers had jurisdiction of the subject matter. The defendant had the requisite notice, and is as much concluded by the decision, as if he had attended in person, before the fence-viewers, at the time of their examination of the premises. From the certificate of the fence-viewers it appears that the only dispute submitted to them was the proper proportion of the value of the said division fence to be paid for by the defendant. They passed upon that question only. They gave a description of the fence, the value at the time of building the same and its present value, and then decided that $38,25 was the just proportion for the defendant to pay. The 36th section requires the decision of the fence-viewers to be reduced to writing, and directs that it shall contain *a description of the fence, and of the proportion to be maintained by each.* This latter clause need not be inserted, when there has been no submission to the fence-viewers of the proportion of fence each was required to maintain.. It is to be presumed there was no dispute on that point, in this case, as that matter was neither submitted or passed upon. The section does not in terms say that the certificate shall state *the proportion of the value of the di-*

Hewitt *v.* Watkins.

*vision fence* which the defendant is to pay. But as the certificate is required to be in writing, and as this was the only matter in dispute submitted, it was obviously necessary that the amount should be stated. The 36th section is merely directory as to the contents of the certificate. The appraisement contemplated by the 37th section is for a different cause from that specified in the 31st and 32d sections. We think an action can be sustained on this certificate, for the amount stated therein, after the jurisdictional facts had been established.

The statute makes the party, enclosing land which had formerly lain open, liable to pay to the party who had built the whole division fence a just proportion of the value *at that time,* of such fence—that is, of the value *at the time of the enclosure.* This enclosure took place in May, 1847. The certificate of the fence-viewers is dated in August, 1848, and it finds the proportion of said value to be paid by the defendant to the plaintiff to be $38,25, " that being, in our judgment *the present value* of said fence, to wit, 75 cents a rod." It is objected that the fence-viewers have not pursued the language of the statute, but instead of finding the value at the time of the enclosure, they have found the value at the time of the giving the certificate, more than a year subsequently. If this were so, it would be an error in favor of the defendant, rather than against him. But the fair meaning of the certificate, when taken altogether, is that by *present value* was intended the value at the time of the enclosure. The fence-viewers were speaking of that time.

The practice of submitting controversies between the owners of adjoining land, to the decision of *fence-viewers*, originated in the colonial government. The first law on the subject was passed in 1750. (1 *Van Sch. L. of N. Y.* 290, § 3.) It has been retained, with some modifications, in every subsequent revision of the laws. (2 *Greenl.* 172, § 18. 1 *K. & R.* 332, § 14. 2 *R. L. of* 1813, 133, § 17.) But none of the statutes provided for the present case, until the revision in 1830. The 31st section as adopted, was not in the report of the revisers, but was introduced with some other changes, by the legislature. It has not hitherto

been the subject of any judicial decision, which has been brought to our notice.

There is a strong equity, that he who has let his land lie open, until the adjoining owner has constructed the entire division fence, should be compelled, when he encloses his lot, and receives the benefit of the fence erected by his neighbor, to make satisfaction for the just proportion which he ought to have built. The common law did not provide for this case, and none of the statutes, prior to 1830, contained any adequate provisions on the subject. It was a very suitable matter to submit to the decision of the fence-viewers of the town, and the statute which makes their determination final upon the parties, is dictated by principles of sound and enlightened policy.

There was in truth no evidence of an accord and satisfaction, which would have authorized the jury to find for the defendant. Their verdict was right upon the merits. The county court did not err in affirming the judgment of the justice.

Judgment of county court affirmed.

[Essex General Term, July 7, 1851.    *Willard, Hand* and *Cady*, Justices.]